## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL SECURITY COUNSELORS** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:11-cv-00442 (RMC) |
| ) | |
| **CENTRAL INTELLIGENCE AGENCY,** ) | |
| **DEPARTMENT OF DEFENSE** ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff National Security Counselors ("NSC") is a non-profit organization that disseminates information to the public regarding government activity related to national security. NSC made Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests to the Central Intelligence Agency ("CIA") and the Department of Defense ("DOD") relating to the Defendants' Mandatory Declassification Review ("MDR") programs. Unsatisfied with the responses it received, NSC sued both the CIA and the DOD. The CIA moves for summary judgment on Counts 1 and 2 of the First Amended Complaint. The Court will deny the CIA's motion for summary judgment.

### I. FACTS

NSC filed two FOIA requests with the CIA relating to its MDR program. The first request was submitted on April 23, 2010 and the second on November 30, 2010.

### A.  First Request (No. F-2010-01033)

On April 23, 2010, NSC submitted a FOIA request to the CIA for "copies of all current [CIA] regulations, policy statements, guidelines, memoranda, training materials, handbooks, manuals, checklists, worksheets, instructions, and similar documents on the topic of [MDR]."  Mot. Summ. J., Declaration of Martha Lutz [Dkt. # 22-1] ("Lutz Decl."), Ex. A.  In this letter, NSC specified that the "request is limited to documents in current use as of 23 April 2010."  *Id.*  The CIA acknowledged receipt of this request on May 5, 2010 and designated it as Request No. F-2010-01033.  *Id.*, Ex. B.  NSC subsequently — by letter dated May 7, 2010 — clarified the date limitation placed on its request, stating that "current" should not be limited to April 23, 2010 and that "any records that represented policies or practices that were implemented after [April 23, 2010]" should also be deemed responsive.  *Id.*, Ex. C.

The CIA follows a standard procedure when responding to FOIA requests.  The Information Management Services ("IMS") serves as the "initial reception point for all FOIA requests made to the CIA."  *Id.* ¶ 19.  Once a request is received, an IMS professional analyzes it to determine which of five agency directorates is reasonably likely to contain records responsive to the particular request.  *Id.*  The CIA's records systems are "decentralized and compartmentalized," making it necessary for an Information Review Officer ("IRO") to determine which components within each of the identified directorates are reasonably likely to contain responsive records.  *Id.* ¶ 20.  Once the components are identified, the IRO works with personnel from each component to devise a search strategy tailored to the particular configuration of the components' records systems, including which records systems to search and which search

strategies to employ. *Id.* Records located through such searches are then reviewed to determine whether they are responsive and whether any FOIA exemption(s) applies. *Id.*

Request No. F-2010-01033 was processed according to this procedure. *Id.* ¶ 24. IMS professionals determined that the Director of Central Intelligence Area "Director's Area" was the only one of the five directorates "reasonably likely" to contain responsive materials. *Id.* ¶¶ 1, 24, 26. The Director's Area "maintains all internal Agency-wide regulatory issuances in one searchable records system." *Id.* ¶ 30. Among the various components of the Director's Area is the Office of the Chief Information Officer, which includes the IMS. *Id.* ¶ 25. The IMS is responsible for administering the MDR program and maintains records related to the program. *Id.* The Director's Area conducted a search of the agency-wide records system and also searched "other IMS records systems" for the requested MDR materials. *Id.* ¶ 30.

The search produced one responsive document, 32 C.F.R. § 1908, which is a CIA regulation on MDR. CIA issued a final response to Request No. F-2010-01033 on May 24, 2011, informing NSC that a thorough search had been conducted and that one responsive document was located. *Id.* ¶¶ 11, Ex. D. The MDR regulation, 32 C.F.R. § 1908, was released to NSC in full. *Id.* ¶ 11, Ex. E.

**B. Second Request (No. F-2011-00396)**

On November 30, 2010, NSC submitted an additional FOIA request to the CIA asking for a copy of the "special procedures for the [Mandatory Declassification] review of information pertaining to intelligence activities . . . or intelligence sources or methods' developed by the Director of Central Intelligence pursuant to Sections 3.6(e) of Executive Order 12,958 and

3.5(e) of Executive Order 13, 292." Lutz Decl., Ex. F.  This request was acknowledged on

December 20, 2010.

Like the first request, this request was assigned to the Director's Area to search

for responsive documents because no other areas were likely to have responsive documents.

According to Ms. Lutz, "IMS searched relevant record systems containing all files reasonably

likely to contain responsive materials and located no records responsive to Plaintiff's request."

Lutz Decl. ¶ 33.  Furthermore, Ms. Lutz concludes that "no search of CIA records would be

likely to locate 'special procedures for the [Mandatory Declassification] review of information

pertaining to intelligence sources or methods developed by the Director of Central Intelligence

pursuant to Sections 3.6(e) of Executive Order 12,958 and 3.5(e) of Executive Order 13,292'

because . . . no such special procedures were ever developed by the then Director of Central

Intelligence under these provisions."  *Id.* ¶ 34.

On January 27, 2011, the CIA provided a final response to NSC stating that the

CIA did not locate any documents responsive to NSC's request.  Plaintiff appealed the adequacy

of the CIA's search to the CIA's Release Panel.  On March 15, 2011, the Release Panel denied

NSC's appeal and found that the CIA had conducted a reasonable search for responsive

documents.  *Id., Ex. K.*

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must

be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is

properly granted against a party who "after adequate time for discovery and upon motion . . . fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, the court must draw all

justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence

as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the

mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.

   FOIA cases are typically and appropriately decided on motions for summary

judgment.  *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*,

485 F. Supp. 477, 481 n.13 (D.D.C. 1980).  In a FOIA case, a court may award summary

judgment to an agency upon the agency's showing that it conducted a search "reasonably

calculated to uncover all relevant documents."  *Weisberg v. United States Dep't of Justice*, 705

F.2d 1344, 1351 (D.C. Cir. 1983).  The adequacy of a search is measured by a standard of

reasonableness, which must be decided on a case by case basis.  *Truitt v. Dep't of State*, 897 F.2d

540, 542 (D.C. Cir.1990).  The question is whether the search itself was adequate

notwithstanding the fact that other responsive documents may exist.  *Steinberg v. United States

Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  An agency is not required to search every

record system, but must conduct a good faith, reasonable search of those record systems likely to

possess the requested information.  *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68

(D.C. Cir. 1990).

### III. ANALYSIS

The Court finds that the CIA has failed to demonstrate that it conducted a reasonable and adequate search for documents in response to Request No. F-2010-01033. Additionally, the affidavit submitted in support of the CIA's motion for summary judgment is sufficiently ambiguous to deny the CIA summary judgment with respect to Request No. F-2011-00396.

### A.  Request No. 01033: Adequacy of CIA's Search

The CIA has failed to demonstrate that its search was adequate.  On a motion for summary judgment, an agency may discharge its burden by submitting a "reasonably detailed affidavit" describing the reasonable search performed and averring that all files likely to contain responsive documents were searched.  *Oglesby*, 920 F.2d at 68.  The Court of Appeals for the District of Columbia Circuit has described the agency's burden as follows:

> The affidavits of the responding agency [need not] set forth with meticulous documentation the details of an epic search for the requested records. Rather, in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.

*Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).  At a minimum, an agency's affidavit must describe "what records were searched, by whom, and through what process."  *Steinberg*, 23 F.3d at 552.  Furthermore, the affidavit must explain the scope and method of the agency's search in a "non-conclusory fashion."  *See Swope v. United States Dep't of Justice*, 439 F. Supp. 2d 1, 5 (D.D.C. 2006).

The affidavit that the CIA relies upon to demonstrate a reasonable search is the Declaration of Martha Lutz, the IRO for the Director's area.  Ms. Lutz described the general process for responding to FOIA requests as well as the specific response to Request No. F-2010-01033.  Ms. Lutz outlined how the CIA chose the Director's Area as the only directorate likely to contain responsive materials because "[w]ithin the Director's Area, IMS administers the CIA's Executive Order Mandatory Declassification Review program and maintains records relating to that program."  Lutz Decl. ¶¶ 24-25.  The affidavit to this point is sufficient as it outlines with reasonable detail the CIA's decision to limit the search to the Director's Area.

When it comes to the actual search for records, however, the declaration merely states that 1) "the Director's Area conducted a thorough and diligent search of relevant Director's Area records systems for [responsive documents], " and 2) the Director's area searched a records system that contains CIA regulations "as well as other IMS record systems."  *Id.*  ¶¶ 29-30.  The affidavit *concludes* that a "thorough and diligent search" was conducted, but does not detail what search terms were used, who conducted the search, how the search was conducted, or what the "other" IMS records systems were that were searched.  Accordingly, the affidavit lacks sufficient detail for the Court to determine whether the search was adequate, and the Court must deny the CIA's motion for summary judgment on this Count.  *See, e.g., Steinberg*, 23 F.3d at 552 (at a minimum, an agency's affidavit must describe "what records were searched, by whom, and through what process.");  *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (holding that agency's declaration was insufficient because it provided only a "general explanation of how the agency responds to all FOIA requests" and failed to provide an explanation for how the search was conducted);  *Friends of Blackwater v. United States Dep't of*

*the Interior*, 391 F. Supp. 2d 115, 121 (D.D.C. 2005) (finding the agency's search to be inadequate where the declaration did not describe specific search terms); *Oglesby*, 920 F.2d at 68 (holding the agency's affidavit insufficient for summary judgment because the affidavit failed to explain how the search was conducted and failed to identify the search terms used); *Banks v. United States Dep't of Justice*, 538 F. Supp. 2d 228, 238 (D.D.C. 2008) (finding that agency failed to demonstrate an adequate search when its affidavits lacked specificity and only stated that "responsible person(s)" conducted "thorough and efficient [searches].").

### B.  Request No. 01033: Scope of the Request

NSC originally limited its request to documents that were "in current use as of 23 April 2010."  *See* Lutz Decl., Ex. A.  Two days after the CIA confirmed receipt of NSC's FOIA request, NSC wrote to the CIA to "clarify and amend" its FOIA request.  *Id.*, Ex. C.  NSC clarified that it was seeking current documents; that the April 23, 2010 date was the date of the submission; and that the CIA should not "exclude any records" that were implemented after April 23, 2010.  *Id.*  The letter further stated that NSC's "request is limited to documents in current use, and records that are no longer in use may be excluded."  *Id.*  The parties dispute whether the CIA reasonably construed the term "current" in its search.

Although there have been multiple executive orders that set forth different MDR provisions, as of April 23, 2010, the operative Executive Order was 13,292.  Because Executive Order 13,292 was the only executive order in force, the CIA asserts that "[o]nly documents used under the MDR provisions of Executive Order 13,292 would have been 'in current use as of 23 April 2010.'" Lutz. Decl. ¶ 28.

NSC disagrees.  According to NSC, the MDR provisions of Executive Order 13,292 "are virtually unchanged from its predecessor order, E.O. 12,958."  Opp'n at 3.  As such, according to NSC, "the vast majority of responsive records, such as checklists, worksheets, and similar reference or training documents, would still be used by CIA analysts when processing MDR requests."  *Id.*  Thus, these records would still be "current" even if they were developed under the prior, virtually identical (with respect to MDR) executive order.

The Court agrees with NSC that the scope of CIA's search might have been unreasonably limited.  Agencies should interpret the scope of FOIA requests liberally.  *See Nation Magazine, Washington Bureau v. United States Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (citing *Truitt*, 897 F.2d at 544-55) (stating that agencies are under "a duty to construe a FOIA request liberally"); *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985) ("[A]gencies should go as far as they reasonably can to ensure that they include what requesters want to have included within the scope of their FOIA requests.").  Additionally, an agency is not permitted to deny requesters information by narrowing the scope of its search to exclude relevant information.  *See Hemenway*, 601 F. Supp. at 1005 ("[An agency cannot] read [a] request so strictly that the requester is denied information the agency well knows exists in its files.").  The results of the search indicate that the CIA was aware that NSC wanted materials in connection with Executive Order 12,958 to the extent that they were still in "current" use.  The search conducted by CIA produced only one document that it deemed responsive to Request No. F-2010-01033.  *See* Lutz Decl., Ex. E.  That document was 32 C.F.R. § 1908, which is entitled, "Public Requests for Mandatory Declassification Review of Classified Information *Pursuant to Executive Order 12958*."  *Id.* (emphasis added).  Therefore, the CIA cannot reasonably claim that

it did not believe NSC sought materials in connection with Executive Order 12,958 (to the extent those materials were still current) when the single responsive document produced by CIA was based on Executive Order 12,958.

In sum, if checklists, worksheets, and similar reference and training documents were still being used by the CIA, although first utilized under Executive Order 12,958 and not Executive Order 13,292, the CIA must "conduct a search reasonably calculated to uncover" those documents. *Weisberg*, 705 F.2d at 1351. The CIA must clarify whether such other documents exist and, if so, conduct a reasonable search for them.

### B. Request No. 00396

Both Executive Order 12,958 and 13,292 require various department heads to develop special procedures with respect to reviewing certain materials for mandatory declassification:

> After consultation with affected agencies, the Secretary of Defense shall develop special procedures for the review of cryptologic information, *the Director of Central Intelligence shall develop special procedures for the review of information pertaining to intelligence activities (including special activities), or intelligence sources or methods*, and the Archivist shall develop special procedures for the review of information accessioned into the National Archives.

Exec. Order No. 12,958 § 3.6(e) (emphasis added); Exec. Order No. 13,292 § 3.5(e) (same). NSC's second FOIA request (No. F-2011-00396) sought a copy of the "special procedures for the review of information pertaining to intelligence activities (including special activities), or intelligence sources or methods" required by the Executive Orders. Lutz Decl., Ex. F. The CIA moves for summary judgment arguing that it could not find any relevant documents and that no special procedures "were ever developed by the then Director of Central Intelligence." *Id.* ¶ 34.

NSC takes issue with the latter phrase.  As long as the phrase "the then Director of Central Intelligence" includes all Directors of Central Intelligence from the time Executive Order 12,958 was signed until the time of the search, then NSC has no problem with the search conducted by the CIA and will voluntarily withdraw this part of its Complaint.  If, however, the phrase "the then Director of Central Intelligence" refers only to John Deutch (the Director when Executive Order 12,958 was signed) or George Tenet (the Director when Executive Order 13,292 was signed) and not to any other director(s) who may have actually developed the special procedures required by the executive orders, NSC argues, the CIA has "completely subvert[ed] the plain meaning of the request" and summary judgment should be denied. Pl.'s Opp'n [Dkt. # 24] at 10.

In its reply, the CIA does not directly clarify who is meant by the phrase "the then Director of Central Intelligence."  Instead, the CIA states that "Plaintiff in effect asks the Court to presume that Ms. Lutz used the phrase 'the then Director of Central Intelligence' as a way to disguise that the agency had secretly interpreted Plaintiff's request as only seeking special procedures developed by one prior Director of Central Intelligence.  No such distinction was intended."  Reply [Dkt. # 25] at 8.  The Court finds the statement sufficiently ambiguous, however, that it cannot grant summary judgment.  If special procedures were not developed by any Director of Central Intelligence from the time Executive Order 12,958 was signed until the time of the search under FOIA, the affidavit can easily be clarified to state as much.  Accordingly, the Court will deny without prejudice the CIA's motion for summary judgement with respect to NCS's second FOIA request.

**IV. CONCLUSION**

For the reasons stated, the CIA's motion for summary judgment will be denied without prejudice.

Date: March 28, 2012                                         _____/s/_____
                                                             ROSEMARY M. COLLYER
                                                             United States District Judge