UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL SECURITY COUNSELORS, | * |
| Plaintiff, | * |
| v. | * |
| | * Civil Action No. 1:11-cv-00442 (RMC) |
| CENTRAL INTELLIGENCE AGENCY, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S PETITION FOR COSTS AND ATTORNEYS' FEES

After successfully litigating a Motion for Partial Summary Judgment filed by Defendant Central Intelligence Agency ("CIA") and obtaining a large volume of previously unprocessed records from both CIA and Defendant Department of Defense ("DOD"), Plaintiff National Security Counselors ("NSC") petitions the Court to award costs and attorneys' fees for this Freedom of Information Act ("FOIA") suit according to the "updated" *Laffey* Matrix in the amount of $14,794.90.

Before a court may award attorneys fees, it must determine first whether the plaintiff is eligible, and, if so, whether the plaintiff is entitled to such an award. *See*, *e.g.*, *Tax Analysts v. DOJ*, 965 F.2d 1092, 1093 (D.C. Cir. 1992); *Union of Concerned Scientists v. Nuclear Regulatory Comm'n*, 824 F.2d 1219, 1222-28 (D.C. Cir. 1987); *Weisberg v. DOJ,* 745 F.2d 1476, 1495 (D.C. Cir. 1984). To be eligible, a party must "substantially prevail." 5 U.S.C. § 552(a)(4)(E). A party substantially prevails if it obtains relief through a judicial order, an enforceable written agreement, a consent decree, or a voluntary or unilateral change in position by the agency, provided the requester's claim is not insubstantial. *See* 5 U.S.C. §

552(a)(4)(E)(ii). Requesters are therefore eligible for fee awards if their lawsuits are catalysts for agency disclosure, even when cases are resolved before final judgment on the merits.

I.   NSC IS ELIGIBLE FOR COSTS AND FEES

It is clear that NSC has substantially prevailed in this lawsuit. As of the filing of the initial complaint, three out of the four FOIA requests in question had not been processed yet, and the fourth had been closed with a "no records" response. Considerably after filing the Complaint, NSC obtained the information it requested.

Moreover, CIA moved for summary judgment on two counts against it, arguing that its search was reasonable in both cases. NSC opposed this motion, and the Court denied it, ordering CIA to conduct a better search for one request—which resulted in a significant number of responsive records—and to more clearly justify its failure to locate records responsive to the other. Had it not been for this litigation, NSC would never have received any of these CIA records, nor would it have learned that CIA actually never created the records it was directed to create by Executive Order.

Regarding DOD, the agency had been processing a previous request for the same records for over thirteen years without any significant movement as of the filing of this case, and within seven months of the filing DOD began releasing responsive records, ultimately releasing approximately 2000 pages of responsive records within the next two years.

By any definition, NSC has substantially prevailed in this case and proven its eligibility for costs and fees.

II.   NSC IS ENTITLED TO COSTS AND FEES

Although a plaintiff has "substantially prevailed" and is therefore eligible for an award, the decision on whether the plaintiff is entitled to actually be awarded attorney fees is within the

discretion of the court. *Tax Analysts*, 965 F.2d at 1093; *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365-68 (D.C. Cir. 1977). Courts generally consider four factors when deciding entitlement.

    **A.**    **Public Interest**

The first factor is whether or not disclosure of the requested information is "likely to add to the fund of information that citizens may use in making in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citations omitted); *see also Tax Analysts*, 965 F.2d at 1094-96 (finding that a public benefit test was met by for-profit tax journal which disseminated information to subscribers); *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir 1979) (citations omitted). "Public benefit" could be demonstrated by, among other things, a public interest group seeking information to further a project benefiting the general public. *See e.g.*, *Church of Scientology of Cal. v. Postal Serv.*, 700 F.2d 486, 493 (9th Cir. 1983); *Blue v. BOP*, 570 F.2d 529, 533-34 (5th Cir. 1978); *Oil, Chem. & Atomic Workers Int'l Union v. DOE*, 141 F. Supp. 2d 1, 7 (D.D.C. 2001); *Des Moines Register & Tribune Co. v. DOJ*, 563 F. Supp. 82 (D.D.C. 1983). An award is possible even when the information is not of general significance, so long as the plaintiff is not seeking it solely for commercial purposes. *Simon v. U.S.,* 587 F. Supp. 1029 (D.D.C. 1984) (suit for personal files).

NSC is a non-profit public interest law firm which specializes in, as the name would suggest, national security matters. Part of NSC's mission is to foster greater public understanding of such issues, especially where they intersect with information and privacy law. Both of NSC's requests to CIA were explicitly for records about how it processed declassification requests for classified records—a topic of significant public interest, especially in the requester community. The first of NSC's requests to DOD was for records pertaining to a highly secret scientific intelligence board, and the second DOD request was for information

3

which would shed light on why processing the first request took over fifteen years. The administrative processing records released in response to that request paint an extraordinary picture of a convoluted and idiosyncratic interagency referral and consultation process about which very little is known, and which is *so* complicated that NSC is still struggling to reduce it to a form understandable to the general public. In short, the release of *all* of these records, and even the revelation regarding why CIA did not have some of them, is in the public interest.

### B.     Commercial Interest

The argument cannot really be made that NSC has a commercial interest in these records, so this factor need not be considered in any depth.

### C.     Nature of Plaintiff's Interest

"Nature of the [complainant's] interest" is "closely related [to] and often considered together" with the commercial benefit criterion. *Tax Analysts*, 965 F.2d at 1095. Favored interests are scholarly, journalistic, or public-interest oriented. *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991). For the reasons stated above, NSC easily satisfies this factor.

### D.     Reasonableness of Agency Decision

If the agency had a "reasonable basis in law" for making the determination it did, courts have found that the requester was not entitled to fees. *See*, *e.g.*, *Chesapeake Bay Found. v. Dep't of Agric.*, 108 F.3d 375, 376 (D.C. Cir. 1997). In cases where delayed production is at issue, courts have awarded fees despite agency arguments justifying the delay. For example, in *Miller v. Dep't of State*, 779 F.2d 1378 (8th Cir. 1985), the 8th Circuit found that the State Department's representations that records were not produced more quickly due to processing backlogs, confusion, and administrative error, although plausible and not indicative of bad faith, were nonetheless "practical explanations, not reasonable legal bases" for withholding. *Id.* at

1390 ("The FOIA does not contain a statutory exception for administrative inefficiency. When a private citizen is obliged to seek legal services in order to wrest from the government information which the government had no legal reason to withhold from him, he is entitled under the Act to be reimbursed for the cost to which he has been put.").

The lack of a reasonable basis in law is even more pronounced in the case of CIA's initial search, which this Court explicitly found to not be reasonable.

Because NSC has demonstrated that it is entitled to costs and fees, the Court should award them.

### III.   FEE CALCULATION

Evaluation of fees is based on the "lodestar," which is the number of hours the lawyer reasonably spent on the case multiplied by the lawyer's hourly rates. *See generally Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Consumers Union v. Fed. Reserve Sys.*, 410 F. Supp. 63, 64 (D.D.C. 1975). A lawyer's hourly rate is measured by its "fair market value," which is determined by the prevailing local rate or the attorney's actual billing rate, whichever is higher, as well as "the quality of the attorney's work." *See generally Evans v. Sheraton Park Hotel*, 503 F.2d 177, 187-88 (D.C. Cir. 1974), cited with approval in *Copeland v. Marshall*, 641 F.2d 880, 889 (D.C. Cir. 1980) (en banc). The *Copeland* decision established the first-step practice of calculating a "lodestar" figure by multiplying reasonable hourly rates for the attorney to whom fees are to be awarded by the number of hours reasonably expended on the litigation by the attorney, and, in addition, removed any doubt that public interest lawyers are entitled to fees calculated at "market rates." 641 F.2d at 900.

The *Laffey* Matrix is very useful as a guide to Market Rate attorney fees for the Baltimore/Washington area.[1] The *Laffey* Matrix has been cited as good evidence of the Market Rate for attorneys practicing in information and privacy matters. Regarding the "updated version of the *Laffey* matrix," the Court in *McDowell v. Dist. of Columbia*, No. 00-594, 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001), stated in part:

> Plaintiffs may point to such evidence as an updated version of the Laffey matrix or the U.S. Attorney's Office matrix, or their own survey to demonstrate the prevailing market rates in the community. . . . [R]ecent cases such as Salazar have justified an award of $444 per hour and $369 per hour based on an updated version of the Laffey matrix.

*Id.* at *8-10 (citations, quotations, and footnotes omitted), citing *Salazar v. Dist. of Columbia*, 123 F. Supp. 2d 8, 13 (D.D.C. 2000). This "updated *Laffey* Matrix" has been found reasonable in this Circuit, not least of all because it is more accurate than the *Laffey* Matrix used by the U.S. Attorney's Office because the updated Matrix is based on increases/decreases in legal services rather than increases/decreases in the entire Consumer Price Index which includes price changes for many different irrelevant goods and services. *Smith v. Dist. of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006); *see also Ricks v. Barnes*, No. 05-1756, 2007 U.S. Dist. LEXIS 22410, at *16 (D.D.C. Mar. 28, 2007) (finding updated Matrix rates reasonable). The updated *Laffey* Matrix can be found at http://www.laffeymatrix.com/see.html (last accessed June 18, 2013).

Both the *Laffey* Matrix and the updated *Laffey* Matrix are computed by multiplying a base hourly rate by an Adjustment Factor (partially determined by the number of years the lawyer has been out of law school). The updated *Laffey* Matrix uses more accurate, recent base hourly rates and a more accurate Adjustment Factor. The "enhancement" of the normal *Laffey* Matrix in this case is further justified by the undersigned's expertise in these narrow fields of

---

[1] So named after the case *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983).

hypertechnical law[2] and the quality of his work. *See Copeland,* 641 F.2d at 889. According to the updated *Laffey* Matrix, the undersigned is entitled to $361/hour for work done before 1 June 2011, $374/hour for work done in the following year, and $383/hour for work done in the year after that. This rate is partially determined by the fact that he has been between four and seven years out of law school for the entirety of this case. (*See* McClanahan Decl. ¶ 2, attached as Ex. A.)

Despite the fact that the undersigned has spent over sixty hours working on this factually complex case over more than two years, he has conscientiously reduced his fee petition to 38.5 hours by removing time spent on work which did not directly lead to useful results and time spent in short conversations and correspondence. (*See id.* ¶¶ 3-8.) Accordingly, he asks for compensation for only 2.7 hours of time at $361/hour, 26.8 hours of time at $374/hour, and 9 hours of time at $383/hour, for a total of $14,444.90. (*See id.* ¶ 10 (time records).) When added to the Court's $350 filing fee, NSC asks for a total award of $14,794.90 in costs and fees.

Defendants have not yet reached a decision regarding NSC's fee petition, despite the fact that they have ostensibly been reviewing it for over five weeks. A proposed Order is included with this petition.

---

[2] A copy of his résumé is attached as Ex. B.

Date:   June 18, 2013

                        Respectfully submitted,

                        /s/ Kelly B. McClanahan
                        Kelly B. McClanahan, Esq.
                        D.C. Bar #984704
                        National Security Counselors
                        1200 South Courthouse Road
                        Suite 124
                        Arlington, VA  22204
                        301-728-5908
                        240-681-2189 fax
                        Kel@NationalSecurityLaw.org

                        *Counsel for Plaintiff*