UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**NATIONAL SECURITY COUNSELORS,**   )
                                    )
      **Plaintiff,**              )
                                    )
      v.                          )    Civil Action No. 11-442 (RMC)
                                    )
**CENTRAL INTELLIGENCE AGENCY,**    )
*et al.,*                           )
                                    )
      **Defendants.**             )
_____ )

**OPINION**

National Security Counselors seeks an award of attorney's fees after prevailing in a case against the Central Intelligence Agency and Department of Defense under the Freedom of Information Act. Defendants oppose the petition, arguing that National Security Counselors hardly prevailed, seeks exaggerated fees, and is not a separate entity from its lawyer, Kelly B. McClanahan. The Court agrees that the record does not support Mr. McClanahan's asserted attorney-client relationship with National Security Counselors. Of course, a lawyer can submit FOIA requests and litigate their denial, but he cannot claim fees without a true, independent client. There is no such client here. Accordingly, the Court will deny the request for costs and attorney's fees.

**I. FACTS**

In 2010, Kelly B. McClanahan submitted four Freedom of Information Act (FOIA), 5 U.S.C. § 552, requests on behalf of National Security Counselors: two to the Central Intelligence Agency (CIA), and two to the Defense Intelligence Agency (DIA), a component of the Department of Defense (DOD) (collectively, Defendants). Mr. McClanahan signed each

1

request on National Security Counselors letterhead.  *See* Defs. Opp'n [Dkt. 59], Ex. A (FOIA Requests) [Dkt. 59-1] at 2–5, 8–10, 12–15, 19–21.

Mr. McClanahan's first FOIA request was submitted to CIA on April 23, 2010, requesting "copies of all current Central Intelligence Agency . . . regulations, policy statements, guidelines, memoranda, training materials, handbooks, manuals, checklists, worksheets, instructions, and similar documents on the topic of Mandatory Declassification Review . . . ." *Id.* at 3.  His second FOIA request to CIA was submitted on November 30, 2010, requesting the "special procedures for the [Mandatory Declassification] [R]eview of information pertaining to intelligence activities (including special activities), or intelligence sources or methods developed by the Director of Central Intelligence pursuant to Sections 3.6(e) of Executive Order 12,958 and 3.5(e) of Executive Order 13,292." *Id.* at 8.

On December 10, 2010, Mr. McClanahan submitted a third FOIA request to DIA, seeking records that were responsive to a FOIA request submitted by Michael Ravnitzky in 1997.  *Id.* at 12.  On the same day, he submitted a fourth FOIA request, again to DIA.  This time, he requested all records pertaining to the administrative processing of Mr. Ravnitzky's FOIA request.  *Id.* at 19.

### A.  FOIA Processing and Litigation

National Security Counselors filed a Complaint on February 28, 2011, which included each FOIA request as a separate Count.  *See* Compl. [Dkt. 1] ¶¶ 7–33.  Defendants filed a partial motion to dismiss, arguing, *inter alia*, that National Security Counselors failed to exhaust administrative remedies with respect to its claim against twelve "John Doe" agencies, that is, unidentified agencies that created some of the records at issue in the Complaint.  Mot. to Dismiss [Dkt. 9] at 5–7.  On July 12, 2011, National Security Counselors filed an Amended

Complaint omitting allegations against "John Doe" agencies that had not been administratively exhausted.  *See* Am. Compl. [Dkt. 18].

One year later, the parties notified the Court that they had settled Count Three of the Amended Complaint, *i.e.*, Mr. McClanahan's third FOIA request to DIA.  *See* Joint Status Report [Dkt. 33] ¶ 4.

On March 8, 2013, Defendants moved for summary judgment on the remaining Counts, which included Mr. McClanahan's first and second FOIA requests to CIA and his fourth FOIA request to DIA.  *See* Mot. for Summ. J. [Dkt. 45].  In their motion, Defendants argued that (1) CIA conducted a reasonable search and produced documents responsive to the first FOIA request; (2) Defendants satisfied the second FOIA request because, after conducting reasonable searches, CIA did not locate any responsive documents; and (3) Defendants properly withheld certain information pursuant to FOIA exemptions.  *Id.* at 10–35.  In a footnote, Defendants noted that the parties had "settled the substantive issues related to [Mr. McClanahan's fourth FOIA request] sent to DIA."  *Id.* at 6 n.1.

On April 16, 2013, National Security Counselors responded with a Notice of Voluntary Dismissal, which noted that it was "satisfied with the information provided in Defendants' filings."  Notice of Voluntary Dismissal [Dkt. 51] at 1.  The Court granted the Notice of Voluntary Dismissal on April 17, 2013.  *See* April 17, 2013 Minute Order.  The instant fee petition followed thereafter.

### B.  Mr. McClanahan and National Security Counselors

Mr. McClanahan has focused his legal career on the intersection between national security law and information and data privacy law.  Petition for Costs and Fees [Dkt. 55], Ex. A (McClanahan Decl.) [Dkt. 55-1] ¶ 2.  He obtained a Master of Arts in Security Studies from

Georgetown University in 2003, received his Juris Doctor from American University in 2007, and then earned a Master of Laws (LL.M.) in national security law from Georgetown University Law Center in 2009.  *Id.*  From 2007 to 2009, Mr. McClanahan was of counsel to the Law Office of Mark S. Zaid, P.C., where he specialized in national security law, "including whistleblowers, security clearances, prepublication review, and FOIA/[Privacy Act] litigation."  *Id.*, Ex. B (McClanahan Resume) [Dkt. 55-2] at 2.  He was of counsel to Kohn, Kohn, & Colapinto, LLP, from 2009 to 2012, with the same national security specialization.  *Id.* at 1.

       The parties agree to all relevant facts concerning National Security Counselors's charter and incorporation.  On August 6, 2009, Mr. McClanahan chartered National Security Counselors as an unincorporated association in the Commonwealth of Virginia.  Pl. Reply [Dkt. 61] at 4; Defs. Opp'n at 5.  National Security Counselors was incorporated on January 3, 2011, under the name "National Security Counselors, Inc."  Defs. Opp'n at 5; *id.*, Ex. B (NSC Incorporation Documents) [Dkt. 59-2] at 2.

       However, National Security Counselors's organizational membership is less clear.  Mr. McClanahan describes himself as "Founder, CEO of a non-profit organization dedicated to educating the public about national security issues, influencing . . . legislation, and providing assistance . . . in security-related legal or administrative proceedings."  McClanahan Resume at 1.  In briefing, he describes National Security Counselors as a "non-profit public interest law firm," Petition for Costs and Fees at 3, and opaquely refers to his "partner [and] interns," McClanahan Decl. ¶ 7.  Thus, at first glance, it is unclear whether any other individuals work alongside Mr. McClanahan on behalf of National Security Counselors.

       The organization's documents and website do not clarify the issue.  On National Security Counselors's letterhead, Mr. McClanahan is identified as the Executive Director and

Bradley Moss as the Deputy Executive Director.  *See* FOIA Requests at 3.  According to the website for National Security Counselors, Mr. Moss received his Juris Doctor from American University in 2006, and then joined the law firm of Mark S. Zaid, P.C., where he is a practicing associate.  *See Board of Directors*, NAT'L SECURITY COUNS., http://nationalsecuritylaw.org/board_of_directors.html (last visited Feb. 1, 2014).  The website further notes that National Security Counselors's Board of Directors consists of Mr. McClanahan, Mr. Moss, and Sean Heare, an "Information Director" who works for SRA International.  *See id.*  Mr. Heare is not mentioned elsewhere as a member of National Security Counselors.  *See id.*

## II.  LEGAL STANDARD

Under FOIA, "district courts 'may' award attorney's fees and costs to members of the public who substantially prevail in FOIA litigation against the government."  *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992) (quoting 5 U.S.C. § 552(a)(4)(E)).  The decision to award attorney's fees is committed to the discretion of the district court, which must consider the facts of the case and the relevant factors.  *Id.* at 1094.

As a threshold matter, an attorney must demonstrate his or her eligibility for attorney's fees under the statute.  In *Kay v. Ehrler*, 900 F.2d 967 (6th Cir. 1990), the Sixth Circuit held that a *pro se* attorney could not recover attorney's fees under the fee-shifting provision of a civil rights statute.  In so holding, the Court reasoned that the purpose of fee-shifting provisions was best served where there was a "filtering of meritless claims by objective attorneys."  *Id.* at 971 (citing *Falcone*, 714 F.2d at 647).

On appeal, a unanimous Supreme Court affirmed, holding that a *pro se* litigant who was also an attorney could not be awarded attorney's fees.  *Kay v. Ehrler*, 499 U.S. 432

(1991). The Court began with the observation that "the word 'attorney' assumes an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award under [42 U.S.C.] § 1988." *Id.* at 435–36. The Court continued with a policy analysis that extends *Kay v. Ehrler* beyond the specific statute discussed in that case. Justice Stevens, writing for the Court, observed that "[e]ven a skilled lawyer who represents himself is at a disadvantage in contested litigation." *Id.* at 437. The Court then concluded:

> A rule that authorizes awards of counsel fees to *pro se* litigants—even if limited to those who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims [by allowing recovery of attorneys' fees] is better served by a rule that creates an incentive to retain counsel in every such case.

*Id.* at 438. Thus, the Supreme Court affirmed the Sixth Circuit and its reliance on *Falcone v. IRS*.

The analysis in *Falcone v. IRS* is particularly helpful here. In that case, the Sixth Circuit explained:

> The award of attorney's fees to successful FOIA plaintiffs was intended to relieve plaintiffs with legitimate claims of the burden of legal costs; it was not intended as a reward for successful claimants or as a penalty against the government. . . . Since the [*pro se* lawyer] never assumed the burden [of legal fees] which Congress intended to ease, an award of fees is inappropriate.
>
> . . .
>
> A final concern in denying attorney's fees to *pro se* plaintiffs is the fear of creating a "cottage industry" for claimants using the Act solely as a way to generate fees rather than to vindicate personal claims. . . . We do not believe that Congress intended to so subsidize attorneys without clients.
>
> . . .
>
> Both a client and an attorney are necessary ingredients for an award of fees in a FOIA case.

6

*Falcone*, 714 F.2d at 647–48.

After *Kay v. Ehrler*, the D.C. Circuit reversed its prior decision in *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C. Cir. 1977), which had held that a *pro se* attorney could recover attorney's fees under FOIA. *See Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1289 (D.C. Cir. 1998) ("It is obvious from the lengthy discussion . . . in *Kay* that the Supreme Court intended its ruling to apply beyond section 1988 cases to other similar fee-shifting statutes, particularly the one in FOIA."). The D.C. Circuit concluded that "[i]t is, in short, impossible to conclude otherwise than that *pro se* litigants who are attorneys are not entitled to attorney's fees under FOIA." *Id.*

### III. ANALYSIS

Mr. McClanahan notes that National Security Counselors was chartered in 2009, before the organization issued FOIA requests in this case, and received an Employer Identification Number from the Internal Revenue Service which allegedly denotes that the organization was a distinct legal entity. Pl. Reply at 4. In addition, this case was filed on February 28, 2011, nearly two months after National Security Counselors was incorporated on January 3, 2011. But these facts do not end the inquiry as to whether National Security Counselors is sufficiently distinct from Mr. McClanahan to establish an attorney-client relationship.

It is true that this Circuit permits an "organization" to recover attorney's fees for its "in-house counsel" where the attorney acts as an agent on behalf of the organization. In *Baker & Hostetler*, 473 F.3d 312 (D.C. Cir. 2006), the D.C. Circuit held that members of a law firm were "sufficiently independent" to represent the firm in a FOIA case, therefore justifying an award of attorneys' fees, *id.* at 325. In dissent, Judge Henderson explained that in *Kay v. Ehrler*,

the Supreme Court distinguished between a sole practitioner representing his own firm and a lawyer who serves as an agent of his or her client and therefore can exercise independent judgment. *Id.* at 327–29 (Henderson, J., dissenting). While Judge Henderson's dissent is not binding, it further amplifies the distinction between independent agents and *pro se* attorneys.

The record shows little, if any, distinction between Mr. McClanahan and National Security Counselors. The organization was not a legal entity distinct from Mr. McClanahan when he submitted FOIA requests in its name in 2010. Defs. Sur-Reply [Dkt. 66] at 2. Moreover, every critical leadership role in the organization belongs to Mr. McClanahan: he is Founder, Executive Director and, while there is some conflicting authority, it appears that he is also the sole officer of the organization. *Compare* McClanahan Resume at 1, *and* FOIA Requests at 3, *with Officers*, NAT'L SECURITY COUNS., http://nationalsecuritylaw.org/officers.html (listing Jeff Stein, "News Media Counselor," as the sole officer of National Security Counselors) (last visited Feb. 1, 2014). Nor does National Security Counselors hold itself out as a separate entity. Despite its formal incorporation, the record contains no evidence that National Security Counselors publicly identifies itself as an incorporated entity, or in any other way distinct from Mr. McClanahan.[1]

The proceedings in this case further demonstrate that National Security Counselors is a one-man operation. Mr. McClanahan acknowledges that he is "both NSC's counsel and the Executive Director of NSC, in effect both the counsel *and* the party." Defs. Opp'n, Ex. E (NSC Reply Brief) [Dkt. 59-5] at 4 n.1. He was the requester for all FOIA requests issued and is the sole attorney on behalf of National Security Counselors here. In fact, Mr. McClanahan served as both requestor and counsel for the large number of FOIA requests that

---

[1] National Security Counselors is not even identified as an incorporated entity on the docket in this case. *See Nat'l Sec. Counselors v. CIA*, Civ. No. 11-442 (D.D.C. filed Feb. 28, 2011).

National Security Counselors submitted to Defendants in the last year. *Id.*, Ex. C (Lutz Decl.) [Dkt. 59-3] ¶¶ 4–5; *id.*, Ex. D (Williams Decl.) [Dkt. 59-4] ¶ 3.

In 2013, Mr. Moss filed one pleading in another case in the name of National Security Counselors, where he identified himself as an associate with Mark S. Zaid P.C. Mr. McClanahan explains that Mr. Moss has access to the court's electronic case filing system as an associate with Mark Zaid, and that Mr. Zaid approved the use of this law firm identification when filing on behalf of National Security Counselors. Pl. Reply, Ex. C (McClanahan Supp. Decl.) [Dkt. 61-1] ¶ 8. However, as the only evidence that anyone other than Mr. McClanahan actually works for National Security Counselors, this is too slim a reed to establish that National Security Counselors exists as more than Mr. McClanahan as a sole practitioner.

The website for National Security Counselors states:

> [National Security Counselors] exists to perform four primary functions: to lawfully acquire from the government material related to national security matters and distribute it to the public, to use this material in the creation of original publications discussing the respective subjects, to advocate for intelligent reform in the national security and information and privacy arenas, and to provide a low-cost alternative to certain deserving clients involved in security law or information and privacy law-related proceedings.

NAT'L SECURITY COUNS., http://nationalsecuritylaw.org (last visited Feb. 1, 2014). With the exception of the last purpose, *i.e.*, to represent clients in security or privacy-related proceedings, none of the organization's activities involves a traditional attorney-client relationship. In this case, National Security Counselors is not representing a "deserving client" because the organization has filed FOIA requests on its own behalf. In short, either National Security Counselors constitutes the "client" or there is none. On this record, the Court finds that there is no client separate from Mr. McClanahan. Despite his experience in national security law, his status as a *pro se* attorney renders him ineligible for an award of attorney's fees.

9

Finally, the Court notes that Mr. McClanahan has submitted fifty-nine FOIA requests to CIA in Fiscal Year 2012 alone.[2]  Lutz Decl. ¶ 4.  There are also five cases pending, including the instant case, that involve forty-seven FOIA requests from National Security Counselors to CIA.  *Id.* ¶ 5.  If the Court were to award attorney's fees here, Mr. McClanahan's practice could become the "cottage industry" that raised concerns for the Sixth Circuit.  *See Falcone*, 714 F.2d at 648.  It is undeniable that FOIA permits an individual to request disclosure from government agencies.  But without a true client, the Government is under no obligation to subsidize self-serving activity.

## IV.  CONCLUSION

Accordingly, Plaintiff's Petition for Costs and Attorneys' Fees [Dkt. 55] is **DENIED**.  A memorializing Order accompanies this Opinion.

Date: February 12, 2014

/s/
ROSEMARY M. COLLYER
United States District Judge

---

[2] This figure includes only requests made by National Security Counselors directly to CIA; it does not include requests that were referred to CIA from other agencies.  This figure is also limited to FOIA requests and does not include requests for Mandatory Declassification Review of CIA's records.  As a result, Mr. McClanahan's submissions to CIA likely exceeded fifty-nine requests in Fiscal Year 2012. Lutz Decl. ¶ 4 n.1.