## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| **NATIONAL SECURITY** | ) | |
| **COUNSELORS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 11-442 (RMC)** |
| | ) | |
| **CENTRAL INTELLIGENCE** | ) | |
| **AGENCY, _et al._,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## OPINION

National Security Counselors seeks attorney fees and costs after prevailing in part in a case against the Central Intelligence Agency and Department of Defense under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  The Court denied the motion, holding that because National Security Counselors and its counsel were one and the same, there was no attorney-client relationship and no attorney fees could be awarded.  _See_ Mem. Op. [Dkt. 67] at 8–9.  On appeal, the U.S. Court of Appeals for the D.C. Circuit reversed and remanded.  National Security Counselors now seeks fees for the original litigation and for the appeal and fee litigation.  Because National Security Counselors prevailed only in part and the fees it seeks are not reasonable, the fee petition will be granted in part and denied in part.

## I.  FACTS

National Security Counselors (NSC) submitted four requests under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  The first was submitted on April 23, 2010, to the Central Intelligence Agency (CIA), requesting copies of current CIA "regulations, policy

statements, guidelines, memoranda, training materials, handbooks, manuals, checklists, worksheets, instructions, and similar documents on the topic of Mandatory Declassification Review . . . ."  Defs. Opp'n [Dkt. 59], Ex. A (FOIA Requests) [Dkt. 59-1] at 3.  The second was submitted to CIA on November 30, 2010, seeking the "special procedures for the [Mandatory Declassification] [R]eview of information pertaining to intelligence activities (including special activities), or intelligence sources or methods developed by the Director of Central Intelligence pursuant to Sections 3.6(e) of Executive Order 12,958 and 3.5(e) of Executive Order 13,292." *Id.* at 8.  The third was submitted on December 10, 2010, to the Defense Intelligence Agency (DIA), a component of the Department of Defense (DOD), calling for records that were responsive to a FOIA request submitted by Michael Ravnitzky in 1997 regarding a secret scientific intelligence board.  *Id.* at 12.  On the same day, a fourth FOIA request was submitted to DIA, pursuing records concerning the administrative processing of Mr. Ravnitzky's FOIA request to determine why the request had taken over a decade.  *Id.* at 19.

On February 28, 2011, NSC filed a Complaint against the CIA and DOD (collectively, Defendants), which included the first through fourth FOIA requests as Counts 1 through 4, respectively.  *See* Compl. [Dkt. 1] ¶¶ 7–33.  Defendants moved for partial dismissal due to the fact that NSC failed to exhaust administrative remedies with respect to its claim against twelve unidentified "John Doe" agencies that that had created some of the records at issue.  Mot. to Dismiss [Dkt. 9] at 5–7.  On July 12, 2011, NSC filed an Amended Complaint omitting allegations against "John Doe" agencies that had not been administratively exhausted. *See* Am. Compl. [Dkt. 18].

One year later, the parties notified the Court that they had settled Count Three of the Amended Complaint regarding the third FOIA request.  *See* Joint Status Report [Dkt. 33] ¶ 4.

On March 8, 2013, Defendants moved for summary judgment on the remaining counts.  *See* Mot. for Summ. J. [Dkt. 45].  Defendants argued that (1) CIA conducted a reasonable search and produced documents responsive to the first FOIA request; (2) CIA satisfied the second FOIA request because, after conducting reasonable searches, it did not locate any responsive documents; and (3) Defendants properly withheld certain information pursuant to FOIA exemptions.  *Id.* at 10–35.  Defendants also noted that the parties had "settled the substantive issues" related to the fourth FOIA request sent to DIA.  *Id.* at 6 n.1.

On April 16, 2013, NSC responded with a Notice of Voluntary Dismissal, which noted that it was satisfied with the information provided in Defendants' filings and that "the value of any further information it could receive outweigh[ed] the work necessary to receive it." Notice of Voluntary Dismissal [Dkt. 51] at 1; *see also* Minute Order 4/17/13 (approving voluntary dismissal).

Subsequently, NSC moved for attorney fees in the amount of $14,444.90.[1]  *See* Mot. for Fees [Dkt. 55]; Reply [Dkt. 63].[2]  Defendants opposed.  *See* Opp'n [Dkt. 59]; Surreply [Dkt. 66].  The Court denied the motion for fees, finding that NSC was not entitled to fees because it was not a separate entity from its lawyer, Kelly McClanahan.  The Circuit disagreed and remanded the case for further proceedings.

NSC supplemented its request to add substantial fees attributable to the fee litigation, and it now seeks a total of $91,750 in attorney fees plus costs.  *See* Supp. Pet. [Dkt. 81] at 3; Supp. Reply [Dkt. 86].  Defendants oppose.  *See* Supp. Opp'n [Dkt. 84].

---

[1] The Court already awarded costs, specifically, the $350 filing fee.  *See* Order [Dkt. 73].

[2] NSC also sought an additional $957.50 for filing the Reply.  *See* Reply at 11.

## II. LEGAL STANDARD AND ANALYSIS

### A. Attorney Fees

### 1. Eligibility and Entitlement to Fees

Under FOIA, a court may award reasonable attorney fees to a claimant who substantially prevails in FOIA litigation.  5 U.S.C. § 552(a)(4)(E).  The decision to award attorney fees is committed to the discretion of the district court.  *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C. Cir. 1992).  "The award of attorney's fees to successful FOIA plaintiffs was intended to relieve plaintiffs with legitimate claims of the burden of legal costs; it was not intended as a reward for successful claimants or as a penalty against the government." *Falcone v. IRS*, 714 F.2d 646, 647 (6th Cir. 1983).  To obtain attorney fees under FOIA, a plaintiff must demonstrate both (1) eligibility and (2) entitlement.  *See McKinley v. Fed. Hous. Fin. Agency,* 739 F.3d 707, 710 (D.C. Cir. 2014).

To be eligible for fees, a plaintiff must have "substantially prevailed."  *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984).  A plaintiff "substantially prevailed" (a) if he won relief through a judicial order, an enforceable written agreement, or a consent decree or (b) if he obtained relief through a "voluntary or unilateral change in position by the agency," *see Davis v. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010), provided that the request for records was not "insubstantial," *see* 5 U.S.C. § 552(a)(4)(E)(ii).  To show that he substantially prevailed, a FOIA plaintiff must "prove that prosecution of the action could reasonably be regarded as necessary to obtain the information and that a causal nexus exists between the action and the agency's surrender of that information."  *Contreras v. Dep't Justice*, 729 F. Supp. 2d 167, 170 (D.D.C. 2010).

To determine whether a plaintiff is "entitled" to fees, courts examine: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested records. *Tax Analysts*, 965 F.2d at 1093-94. The first three factors aid a court in distinguishing between requesters who seek documents for public informational purposes and who may need an incentive to litigate and those who seek documents for private advantage and who typically do not need an incentive. *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008). The last factor, "the reasonableness of the agency's withholding," can be dispositive—if the Government was correct as a matter of law to refuse to release records, the plaintiff is not entitled to fees. *Id*. at 1158. Balancing these factors is within the discretion of the district court. *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008).

The parties agree that NSC prevailed on the first FOIA request. *See* Mot. for Fees at 2 (asserting that CIA released a significant number of records responsive to the first request); Opp'n at 12 ("plaintiff substantially prevailed on its first claim . . . .").[3]  In contrast, NSC did not prevail on the second FOIA request, as CIA searched but found no responsive records. *See Contreras*, 729 F. Supp. 2d at 168 n.3 (when agency did not find any records, FOIA plaintiff cannot show that any records were improperly withheld). NSC agrees that ordinarily this would not be considered a "win," but argues that the request inured to the public interest because the second FOIA request caused CIA to admit that it had not developed special procedures that it had been required to develop by Executive Order. The alleged public benefit could weigh in

---

[3] NSC prevailed on the first FOIA request because the Court denied CIA's first motion for summary judgment without prejudice and required a broader search. *See* Op. [Dkt. 30]; Order [Dkt. 31]. CIA conducted a new search and released additional records.

favor of NSC as to its "entitlement" to fees, but does not demonstrate that NSC *prevailed* on Count 2.

The parties debate whether NSC prevailed on Counts 3 and 4 under the catalyst theory. The Department of Defense (DOD) had been processing a previous request for the same records since 1997, and within seven months after this suit was filed, DOD began releasing responsive records; over the course of two years, DOD released approximately 2000 pages. Defendants argue that NSC has not proven a causal nexus between this lawsuit and DOD's release of documents and that the mere fact that DOD released documents after this suit was filed does not prove causation. *See Alliance for Responsible CFC Policy, Inc. v. Costle*, 631 F. Supp. 1469 1469 1470 (D.D.C. 1986) (under catalyst theory of eligibility for fees, a plaintiff must show causation); *Simon v. United States*, 587 F. Supp. 1029, 1031 (D.D.C. 1984) (mere sequence of events does not demonstrate causation and thus eligibility for fees).

The standard is not particularly high. To show that he prevailed, a FOIA plaintiff must prove that prosecution of the action "could reasonably be regarded as necessary to obtain the information" and that a causal nexus exists between the lawsuit and the release of records. *Contreras*, 729 F. Supp. 2d at 170. Without access to the internal workings of the agency, a plaintiff is hard pressed to prove that the actual reason the agency released documents was the plaintiff's FOIA suit. The timing here provides evidence of causation, *i.e.*, that NSC filed suit in 2011 and within seven months DOD began releasing documents that had been requested in 1997. While DOD argues that mere timing does not prove causation, DOD does not presented any evidence to the contrary. In light of the timing of the release of the documents, this suit can reasonably be regarded as causing the release of records. The Court finds that NSC prevailed on Counts 3 and 4.

Because NSC substantially prevailed on Counts 1, 3, and 4, the next question is whether NSC is "entitled" to attorney fees.  In examining the issue of entitlement, the Court must look at the public benefit derived from the case, the commercial benefit to the plaintiff, and the nature of plaintiff's interest in the records.  *Tax Analysts*, 965 F.2d at 1093-94.  NSC is a nonprofit public interest firm whose mission, in part, is to foster greater public understanding of national security matters.  Mot. for Fees at 3.  The first FOIA request was for CIA records concerning how it processed requests to declassify classified records.  The third FOIA request was for DOD records regarding a scientific intelligence board, and the fourth request was for information regarding why a prior request took over 13 years.  All of the requests were regarding matters of public interest.  Further, Defendants do not contend that the FOIA requests benefitted NSC commercially.  Instead, Defendants argue that the documents released in response to the fourth FOIA request did not actually shed light on why the FOIA processing of the Ravnitzky request took so long because the records were redacted due to the fact they were classified or otherwise exempt under FOIA.  Defendants cite no legal authority to support this proposition.  Because "disclosure, not secrecy, is the dominant objective of [FOIA]," *see Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976), the Court declines to adopt this reasoning as it could encourage heavy redaction.

The fourth and final factor relevant to a plaintiff's entitlement to fees is whether the agency's withholding of the requested records was reasonable.  *Tax Analysts*, 965 F.2d at 1093-94.  Defendants do not argue that CIA was reasonable in withholding documents in response to the first FOIA request, and thus this issue is conceded.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

With regard to the third and fourth FOIA requests, DIA contends that it did not withhold documents at all, that there was simply a delay in administrative processing and delay does not entitle a FOIA plaintiff to an award of fees, absent bad faith. *See Read v. FAA*, 252 F. Supp. 2d 1108, 1112 (W.D. Wash. 2003) (finding that delay due to ineptitude alone is not sufficient to weigh in favor of a fee award); *Ellis v. United States*, 941 F. Supp. 1068, 1080 (D. Utah 1996) (when a plaintiff challenges the delay in production of requested documents rather than withholding of documents, the reasonableness factor does not favor a fee award so long as the Government was not engaging in obdurate behavior or acting in bad faith). Here, however, DOD had delayed over 13 years in responding to the third FOIA request. DOD does not advance any explanation for the length of the delay. Without more from DOD, it is difficult to find it was reasonable in its protracted delay.

In sum, the factors relevant to NSC's entitlement to attorney fees balance in favor of NSC. NSC is entitled to attorney fees with respect to Counts 1, 3, and 4 of the Amended Complaint.

### 2. Rates

Once it is determined that a litigant is entitled to attorney fees, the court must calculate the award by multiplying the hours reasonably expended in the litigation by a reasonable hourly fee—the "lodestar"[1] amount. *Bd. of Trs. of Hotel & Restaurant Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). The fee applicant bears the burden of demonstrating that the claimed rate and number of hours are reasonable. *Blum v. Stenson*, 465

---

[1] The "lodestar" approach to fee awards was established by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and is the approach followed by the federal courts in most fee award disputes. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002).

U.S. 886, 897 (1984); *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

"[A]n attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is

in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation." *Kattan by Thomas v. District of Columbia*, 995

F.2d 274, 278 (D.C. Cir. 1993). A rate determined this way is usually deemed to be reasonable

and is referred to as the "prevailing market rate." *Blum*, 465 U.S. at 895 n.11. Given the

variation in attorneys' skills and experiences, the prevailing market rate for established

practitioners is higher than that for younger lawyers. *See id.* Reasonable attorneys' fees include

charges for legal assistants and law clerks. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *In re

Donovan*, 877 F.2d 982, 993-94 (D.C. Cir. 1989) (paralegals and law clerks should be

compensated at their market rates).

The *Laffey* Matrix[1] was developed by the United States Attorney's Office for the

District of Columbia and it provides the prevailing market rates for complex federal litigation in

the District of Columbia. *Covington*, 57 F.3d at 1109. It "creates one axis for a lawyer's years

of experience in complicated federal litigation and a second [axis] for rates of compensation."

*Griffin v. Wash. Convention Ctr.*, 172 F. Supp. 2d 193, 197 (D.D.C. 2001).

NSC cites an "Adjusted Matrix" as the proper source for billing rates. *See*

http://www.laffeymatrix.com/see.html (last visited on May 11, 2016). NSC asserts that its

---

[1] *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 74 F.2d 4 (D.C. Cir. 1984), as modified by *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988). *See* Laffey Matrix 2003-14, https://www.justice.gov/sites/default/files/usao-dc/legacy/2013/09/09/Laffey_Matrix%202014.pdf (last visited on May 11, 2016); Laffey Matrix 2014-15, https://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf (last visited on May 11, 2016); Laffey Matrix 2015-16, https://www.justice.gov/usao-dc/file/796471/download (last visited on May 11, 2016).

attorneys should be paid at adjusted higher rates because the Adjusted Matrix "uses more accurate, recent base hourly rates" and because attorney Kelly McCallahan is a specialist with an LLM in national security law. Mot. for Fees at 6-7; Reply at 10.  Mr. McClanahan graduated from law school in 2007.  *See* Mot. for Fees, Ex. B (McClanahan Resume).  Co-counsel Bradley Moss graduated from law school in 2006.  *See* Supp. Pet., Ex. B (Moss Resume).  According to the Adjusted Matrix, Mr. McClanahan's hourly rate would be $361 for work before June 1, 2011, $374 for work the following year, and for the next years in succession $383, $393, $581, and $586.  Mr. Moss's hourly rate for work done from June 1, 2014 through May 2015 would be $581 and for work June 1, 2015 until now would be $586.[4]  The Adjusted Matrix sets rates that are 25% to 50% higher than the regular *Laffey* rates.  For example, Mr. McClanahan's rate in 2011 would be $275 per hour under the *Laffey* Matrix instead of $361 under the Adjusted Matrix; his rate in 2015-16 would be $386 per hour under the *Laffey* Matrix and it would be $581 in 2015 and $586 in 2016 under the Adjusted Matrix.

The problem for NSC is that this was a typical FOIA case that was not complex. It did not require the skills of a specialist in national security or privacy law.  In fact, the bulk of the work for which fees are requested was not even FOIA litigation, it was uncomplicated fee litigation.  The regular *Laffey* Matrix provides sufficient compensation for this run-of-the-mill case.  The Court declines to apply the enhanced rates set by the Adjusted Matrix.

### 3. Number of Hours Billed and Sufficiency of Information Provided

Fee applications must "include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting

---

[4] NSC also claims $179 per hour for over 11 hours of work by unidentified interns and an "of counsel" attorney.  Because NSC did not name these individuals or specify their skills and training, no fees can be awarded for their work.

documents, if any." *Donovan*, 877 F.2d at 994.  A fee applicant may satisfy its burden of demonstrating that its time was reasonably spent by submitting "'sufficiently detailed information about the hours logged and the work done' that permits the district court to 'make an independent determination whether or not the hours claimed are justified.'" *Cobell v. Norton*, 231 F. Supp. 2d 295, 306 (D.D.C. 2002) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  The D.C. Circuit has emphasized that "[c]asual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees.  Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Concerned Veterans,* 675 F.2d at 1327.  "[I]t is insufficient to provide the District Court with very broad summaries of work done and hours logged." *Id.*  "Hours may also be rejected when work descriptions are so general that a court cannot ascertain the reasonableness of the time claimed." *Davis County Solid Waste Mgmt. & Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 761 (D.C. Cir. 1999).  Further, a plaintiff is not entitled to attorney fees for nonproductive time or for time expended on issues on which a plaintiff ultimately did not prevail, *see Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1499 (D.C. Cir. 1984); *Judicial Watch Inc. v. Dep't of Justice*, 878 F. Supp. 2d 225, 240 (D.D.C. 2012), and is not entitled to fees for duplicative work, *see Watkins v. Vance*, 328 F. Supp. 2d 23, 26 (D.D.C. 2004).

NSC submitted a chart of billable hours with brief descriptions of the work performed in the FOIA litigation.  *See* Supp. Pet., Ex. A (McClanahan Decl.)  [Dkt. 81-1] ¶ 7 (replacing prior submission).  The chart includes time spent on unsuccessful work.  It includes work in pursuit of the second CIA request, NSC's unsuccessful claim.  It also includes work related to NSC's motion for leave to file an appellate reply brief with excess pages, filed at the

same time that it filed the too-long reply.  *See* Supp. Opp'n, Ex. A (Circuit Docket Sheet).  When

the Circuit denied the motion, NSC redrafted and refiled the reply.  The attorney hours for this

also appear on NSC's attorney fee chart.   *See* McClanahan Decl.  [Dkt. 81-1] ¶ 7 (entries on

4/12/15 through 7/24/15).

        In addition to including hours billed for work on unsuccessful issues, the chart

appears to be an after-the-fact summary, not a contemporaneous record, and it lacks detail.

Further, there are 32 billing entries for time spent by one attorney "discussing case" with co-

counsel.  The entries are duplicative, as they bill on the same day for the same time period for

both Mr. McClanahan's discussions with Mr. Moss as well as Mr. Moss's discussions with Mr.

McClanhan.  *See id.* ¶ 7 (entries on 10/16/14, 10/27/14, 12/12/14, 1/5/15, 1/8/15, 11/11/15,

1/12/15, 3/17/15, 3/23/15, 3/30/15, 4/1/15, 4/3/15, 4/9/15, 4/10/15 through 4/12/15, 1/15/16).

While conversation between co-counsel may be necessary and productive at times, the high

number of such entries reveals duplicative and non-productive attorney work.

        Even though the chart is not a contemporaneous record and it lacks specificity in

some instances, it is not so deficient as to justify a rejection of fees altogether.  "Where the

documentation of hours is inadequate, the district court may reduce the award accordingly."

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  When a large number of billing entries are

deficient, a court can reduce the fees by a reasonable "across-the-board percentage."  *Role

Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004); *e.g.*, *Berkeley v. Home Ins.

Co.*, 68 F.3d 1409, 1419-20 (D.C. Cir. 1995) (affirming lower court's reduction of fees by 50%

in part due to the fact that the time records were created 2 years after the work was performed);

*Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 825 F. Supp. 2d 226, 231

(D.D.C. 2011) (awarding fees to plaintiff whose counsel did not keep contemporaneous records,

but reducing them by 37.5% to account for inaccuracies due to poor timekeeping habits);

*Boehner v. McDermott*, 541 F. Supp. 2d 310, 326 (D.D.C. 2008) (applying 25% reduction given

lack of substantiation of fee request).  Instead, the Court will reduce the fees.

To sum up, the Court will award fees reduced by a reasonable percentage because

(1) the billing chart includes claims for which Plaintiff was not successful; (2) the chart was

prepared *post hoc*, lacks sufficient detail, and includes duplicative work; and (3) NSC seeks

excessive hourly rates instead of those set forth in the *Laffey* Matrix.[5]  The Court will reduce the

fees by 40% (*i.e.*, $36,700).  The Court will award to NSC attorney fees in the amount of

$55,050 (*i.e.*, $91,750 minus $36,700).

### B. Costs

NSC also seeks to recover the following costs: $505 for filing the notice of appeal

in district court and $38.08 for binding the Joint Appendix.[6]  Generally, the prevailing party on

appeal is entitled to costs taxed by the Circuit under Federal Rule of Appellate Procedure 39(a).

A party who seeks costs is required to file a request to the Circuit Clerk's office within 14 days

---

[5] Defendants also contend that the award of fees attributable to the fee litigation, so called "fees on fees," should be reduced to exclude time NSC spent unsuccessfully pursuing fee requests that were denied by the Court.  While the Supreme Court has found that "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation," *see Commn'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10, a court can decline to reduce a fee award where the plaintiff prevails on the major issues raised in its fee award motion.  *See Citizens for Responsibility & Ethics in Washington*, 825 F. Supp. 2d at 233; *see also Tax Analysts*, 965 F.2d at 1094 (attorney fee award is in court's discretion).  Here, NSC prevailed on the major issues and some amount of fees on fees is appropriate.

[6] NSC had requested an award for the cost of printing and binding its appellate briefs, *see* McClanahan Decl. ¶ 6, but later withdrew this request.  *See* Supp. Reply [Dkt. 86] at 8.

after a judgment. *See* Fed. R. App. P. 39(d)(1); D.C. Cir. Rule 39(a).[7]  This provision governs

NSC request for the $38.08 cost for the Joint Appendix.

      NSC's request for the $505 fee for filing the notice of appeal in district court is

governed by Federal Rule of Appellate Procedure 39(e), which provides that the cost for the

filing of the notice of appeal is taxable in the district court.  Unlike Rule 39(d), Rule 39(e) does

not impose a time limit; a Rule 39(e) motion is timely if it is filed in the district court within a

"reasonable time" after the Circuit issues the mandate. *Sudouest Import Sales Corp. v. Union

Carbide Corp.*, 102 F.R.D. 264, 265 (1984).[8]

      In this case, the Circuit entered judgment on January 15, 2016, and the mandate

was issued on March 9, 2016. *See* Judgment & Mandate [Dkt. 76].  NSC moved for costs as part

of its Supplemental Motion filed on April 4, 2016. *See* Supp. Pet. [Dkt. 81].  Thus, the request

for the cost of the Joint Appendix was filed too late and in the wrong court pursuant to Rule

39(d).  April 4 was well past 14 days after the January 15 issuance of the Circuit's judgment and

NSC filed its request in district court when it should have filed it in the Circuit.  In contrast, the

petition for costs associated with filing the notice of appeal was filed within a reasonable time

---

[7] The 14-day period can be extended upon motion if good cause is shown.  Fed. R. App. P. 26; *see also Sims v. Great-West Life Assur. Co.*, 941 F.2d 368, 370-71 (5th Cir. 1991) (attorney's lack of knowledge regarding time limit did not demonstrate good cause); *Mollura v. Miller*, 621 F.2d 334, 336 (9th Cir. 1980) (counsel's miscalendaring of event does not constitute good cause).

[8] The filing of a notice of appeal divests the district court of jurisdiction and vests jurisdiction in the court of appeals over those matters on appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *LaRouche v. U.S. Dep't of Treasury*, 112 F. Supp. 2d 48, 52 (D.D.C. 2000).  The district court does not regain jurisdiction until the court of appeals issues its mandate. *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997); *see Murphy v. L & J Press Corp.*, 577 F.3d 27, 29 (8th Cir. 1978) (district court proceedings after an appellate judgment must await issuance of the mandate).

after the mandate was issued—the Mandate was issued on March 9, 2016 and the request for the

$505 notice of appeal fee was file on April 4, 2016.  Accordingly, the Court will grant in part and

deny in part the request for costs, and will award $505 in costs to NSC.

### C. Apportionment

Of the four claims at issue in this suit, NSC was successful on one claim against

CIA and two claims against DOD.  Thus, CIA will be liable for paying 33.5 % of the fees and

costs awarded here, and DOD will be liable for paying the remaining 66.5%.

### IV. CONCLUSION

Accordingly, NSC's motion for attorney fees and costs [Dkt. 55] and

supplemental petition [Dkt. 81] will be granted in part and denied in part.  NSC will be awarded

$55,050 for attorney fees and $505 in costs.  CIA will be liable for 33.5% of the fees and costs,

and DOD will be liable for the remaining 66.5%.  A memorializing Order accompanies this

Opinion.


Date:  May 25, 2016                                      _____/s/_____
                                                        ROSEMARY M. COLLYER
                                                        United States District Judge